SPRAGINS, BUCK & CO., *IN RE* MANN v. POOLE.

1. APPEAL.—A, B, and C serve notice of appeal on codefendants, the same attorneys represent D, the plaintiff. *Held*, that defendants cannot object to the appeal of A, B, and C on the ground that they did not serve notice of appeal on attorneys of D.

2. RES ADJUDICATA.—The question as to what kind of property the proceeds of real estate sold by the assignee in this case should be, is *res adjudicata.*

3. ATTORNEY'S FEES—RECEIVER—ASSIGNEE.—The ten per cent. attorney's fees stipulated in mortgage taken to secure credit portion of purchase money of property sold by assignee should be paid to the attorney foreclosing mortgage, when the receiver subsequently appointed does not object.

4. RENTS—JUDGMENT—PERSONAL PROPERTY.—The rents of realty on which judgment is a lien is personal property.

5. AN ASSIGNEE is entitled to interest on commissions.

6. AN ASSIGNEE is not entitled to commissions on sums not actually collected by him.

7. RECEIVER.—The compensation to be allowed a receiver is not fixed definitely by statute.

8. CREDITOR'S BILL—CREDITOR.—Where a creditor does not come in and prove his claim on the day appointed for that purpose, in an order calling in creditors, and enjoining them from the benefits of the proceeding if they do not so come in, he cannot reap the benefit of the proceeding by coming in after said day.

Before TOWNSEND, J., Laurens, May, 1895.      Modified.

The following is the Circuit decree appealed from:

This case has been before the Supreme Court twice, and under the ruling of that Court, and the decree and orders made on Circuit, the only open questions are of an administrative nature simply. These questions were argued before me at February term of Court of Common Pleas for Laurens County, 1896. The first and most important question is, what disposition shall be made of the account ordered paid by Judge Watts to plaintiffs, which the Supreme Court reversed? I hold that this fund must be distributed among the creditors of J. T. Poole, who appealed as to this preference to plaintiffs. The matter is *res adjudicata* as to

those who did not appeal, and neither they nor the plaintiffs can participate in its distribution. The next question is as to the surplus proceeds of the Power mortgage. This, I hold, is personalty, and goes with the general fund, and should be distributed among creditors generally; this to include the amount claimed as ten per cent. attorney's fees for foreclosing the Power mortgage, as this claim is not allowed. The next question is as to the rents of the Spartanburg lands. These and all other rents must be included in the general fund. The next question is, whether Mr. Dial is entitled to compensation for selling the Martin house and taking the Power mortgage to secure the purchase money. I think he should be compensated for his services, but I am precluded from doing so by the ruling of the Supreme Court. But he is entitled to interest on the amount allowed him from the date of Judge Watts' degree. The only remaining question is the compensation to be allowed H. W. Anderson as receiver. As to this, he is allowed two and one-half per cent. on all funds turned over to him by N. B. Dial, Esq., including the proceeds of sale of the Power mortgage, and five per cent. on the proceeds of all sales made by him, and moneys collected by him, including the proceeds of sale of the choses in action in his hands uncollected, which he is authorized and directed to dispose of at public sale, at such time as he may deem best for the interest of creditors. That upon compliance with the terms of this decree, and all other orders and decrees of force in this case, and filing with the clerk of this court a report of all receipts and disbursements in this case, H. W. Anderson, as receiver, be, and is hereby, discharged from the duties and liabilities of the trust reposed on him.

Let the claim of $618.36 of H. B. Claflin & Co. participate in the distribution according to its rank. It should have been stated in this decree, in connection with the rights of appealing creditors, that no creditors appealed except those represented by N. B. Dial, Esq., F. P. McGowan,

Esq., and W. H. Martin, Esq., and they alone are entitled to the results.

From this decree, the excluded creditors appeal, on the following exceptions:

1. Because his Honor erred in holding that the amount ordered paid by the decree of Judge Watts to plaintiffs should be distributed among the creditors of J. T. Poole who appealed from said decree in regard thereto, and that such appealing creditors were only those represented by N. B. Dial, Esq., F. P. McGowan, Esq., and W. H. Martin, Esq.

2. Because his Honor erred in not holding that the judgment creditors above named, except J. & H. Mann & Co., appealed from the decree of Judge Watts giving plaintiffs a preference and directing that they be first paid out of the proceeds of the lands.

3. Because his Honor erred in not holding that the Supreme Court had declared the judgment creditors entitled to the proceeds of the lands according to their legal priority, and in not directing the receiver to pay said judgment creditors, according to their rank, in preference to all other creditors.

4. Because, even if the amount ordered by Judge Watts to be paid the plaintiffs does not go to judgment creditors according to their priority, his Honor erred in not allowing the said plaintiffs to participate in its distribution.

5. Because his Honor erred in holding that "the surplus proceeds of the Power mortgage" is personalty, and goes into the general fund, to be distributed among creditors generally.

6. Because his Honor erred in holding that the ten per cent. attorneys' fees should go into the general fund and be distributed among the creditors generally; when, in fact, the receiver had nothing to do with said fees, but they were allowed the attorneys by a decree of foreclosure in another action, and paid them by the clerk of court, who made the sale under said decree.

7. Because his Honor erred in holding that the rents of the Spartanburg lands must be included in the general fund, and in not holding that said rents are a part of the realty, and should go as the proceeds of said lands.

8. Because his Honor erred in holding that N. B. Dial, Esq., is entitled to interest on the amount of compensation allowed him from the date of Judge Watts' decree.

9. Because his Honor erred in holding that Receiver H. W. Anderson is entitled to a commission of only two and one-half per cent. on the proceeds of the Power mortgage, when he should have allowed him five per cent. on said proceeds.

10. Because his Honor erred in allowing the claim of H. B. Claflin & Co. to participate in the distribution of the proceeds, when, as a matter of fact, said claim was never established nor admitted.

Daniel Miller & Co., A. M. Robinson & Co., and N. B. Dial also appeal from the decree of Judge Townsend, alleging he erred:

1. In ordering the funds which Judge Watts decreed should be paid the plaintiffs to be distributed among all the creditors who appealed; whereas he should have held that said funds should be applied to the judgments of Miller & Co. and Robinson & Co., they being junior in rank and priority of any who appealed to the Supreme Court.

2. Because he erred in not holding that the Supreme Court fixed the rank and priority of judgments against Poole, and erred in not ordering them so paid, and erred in not finding that Judge Watts' decree was *res adjudicata* as to all who did not appeal therefrom.

3. Because he erred in not allowing N. B. Dial commissions on sale of the Martin house, and erred in holding this was *res adjudicata.*

4. Because he erred in not holding and decreeing that Dial was entitled to the ten per cent. commission included in the Power mortgage, or, at least, entitled to ten per cent. after paying the debts out of the funds.

*Messrs. Ball, Simkins & Ball, Johnson & Richey, Simpson & Barksdale, Furguson & Featherstone,* and *N. B. Dial,* for appellants.

*Messrs. W. H. Martin, F. P. McGowan,* and *N. B. Dial,* contra.

Jan. 6, 1897.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   This being the third appeal in this case, it is not necessary now to make anything like a full statement of the facts of the case, as they may be found in 40 S. C., 1, and 44 S. C., 65.   It will be sufficient to state here, in general terms, that the action was originally commenced on the 21st June, 1892, for the purpose of setting aside an assignment made by J. T. Poole to N. B. Dial for the benefit of his creditors, as well as certain mortgages executed by said Poole in favor of certain members of his family and other relatives.   The case was first heard by his Honor, the late Judge Norton, who rendered a decree setting aside the deed of assignment, but declining to set aside the mortgages, appointing a receiver of the property purporting to be covered by the deed of assignment, and calling in the creditors of J. T. Poole to establish their demands.   In that decree it was adjudged that the proceeds of the property which had been sold by Mr. Dial as assignee "be substituted for the property itself," and from this portion of the decree there was no appeal.   There was, however, an appeal from other portions of the decree, which resulted in a judgment, amongst other things, setting aside the mortgages as well as the deed of assignment.   The case again came before his Honor, Judge Watts, who rendered a decree, which is fully set out in 44 S. C., beginning on page 66.   In that decree, one of the main questions considered was as to what compensation should be allowed Mr. Dial for his services while acting as assignee under the deed of assignment which had been set aside, and another as to the order in which creditors who had established their demands

against Poole should be paid.  From that decree, also, there was an appeal, which resulted in a judgment of this Court, that, under the statute (secs. 2070 and 2145 Rev. Stat.), Mr. Dial could only be allowed "five per cent. on all money actually collected by him from the assets, and two and one-half per cent. on all money paid out by him, not including, however, the amount turned over to the receiver under the order of the Court;" and that the judgment creditors of Poole were entitled to be paid out of the proceeds of the property upon which their judgments were a lien, in the order of the dates when such liens were acquired, without any preference in favor of Mann & Co., as allowed by the decree of Judge Watts.  The case again came before his Honor, Judge Townsend, who rendered a decree, which is set out in "Case," and which should be incorporated by the Reporter in his report of the case.  From that decree this appeal is taken by all of the judgment creditors, except those represented by Mr. Martin and Mr. McGowan, as well as by the receiver, upon the several grounds set out in the record, which should likewise be incorporated in the report of the case.

These exceptions raise the following questions, which will be considered in their order, without taking up the grounds of appeal *seriatim*, viz: 1st. Whether there was error on the part of Judge Townsend in excluding certain of the judgment creditors from any participation in so much of the fund awarded to the plaintiffs, Mann & Co., by Judge Watts, erroneously, as this Court held, solely upon the ground that such excluded judgment creditors had not appealed from that portion of Judge Watts' decree.  2d. Whether there was error in holding that the surplus proceeds of the Power's mortgage was personalty, not covered by the liens of any of the judgments, and must, therefore, be distributed amongst the creditors generally.  3d. Whether there was error in holding that the ten per cent. attorneys' fees provided for in the Powers mortgage should go into the general fund and be distributed amongst the creditors generally.

4th. Whether there was error in holding that the rents of the Spartanburg lands were not covered by the liens of any of the judgments, and must, therefore, be distributed amongst the creditors generally. 5th. Whether there was error in holding that the amount allowed Mr. Dial for commissions should bear interest from the date of the decree of Judge Watts. 6th. Whether there was error in not allowing Mr. Dial commissions on the sale of the Martin house under the Power mortgage. 7th. Whether there was error in allowing the receiver only two and one-half, instead of five, per cent. on the proceeds of the Powers mortgage. 8th. Whether there was error in allowing the claim of H. B. Claflin & Co. to participate in the distribution of the fund in the hands of the receiver.

For a proper understanding of the first question, it will be necessary to state that the judgment creditors were very numerous, and, for convenience of reference, they will be divided into classes designated by the names of the attorneys by whom they are represented. 1st. Those represented by Messrs. Ball, Simkins & Ball, Johnson & Richey, Simpson & Barksdale, Furguson & Featherstone. 2d. Those represented by Mr. Dial. 3d. Those represented by W. H. Martin, Esq., and F. P. McGowan, Esq., who also represented the defendants in the main case. The creditors represented by Messrs. Ball, Simkins & Ball, and the other gentlemen above named, were excluded by Judge Townsend from any participation in so much of the fund as was awarded to the plaintiffs, Mann & Co., by the decree of Judge Watts, upon the ground that said creditors did not appeal from that portion of the decree of Judge Watts, and hence such decree was *res adjudicata* as to said judgment creditors. This, we think, was error, for two reasons. 1st. It is a mistake to say that these creditors did not appeal from that portion of the decree of Judge Watts. Their grounds of appeal from that decree are set out in the case now before us, and certainly any one of the first five grounds, especially the third, would be amply sufficient to raise the

question of error in so much of the decree of Judge Watts as gave the plaintiffs, Mann & Co., priority over the other judgment creditors. But the contention seems to be, that although these grounds do raise that question, yet as they were never served upon the attorneys of Mann & Co., these excluded judgment creditors cannot be regarded as having appealed. While such an objection coming from Mann & Co., or their attorneys, might be listened to, we are at a loss to perceive how it can come from any of the other judgment creditors, who were duly served with the notice and ground of appeal. Besides, it appears that Mann & Co. were represented by some, if not all, of the same attorneys who also represented the excluded judgment creditors; and certainly it would have been an idle ceremony to serve themselves with their notice and ground of appeal. It is clear, therefore, that the Circuit Judge having made his ruling under a misconception of the facts, was in error in excluding the judgment creditors above designated from any participation in so much of the fund as would have gone to the plaintiffs, Mann & Co., under the decree of Judge Watts, if it had not been reversed in that respect by this Court. 2d. But, in addition to this, it seems to us, that this question has been conclusively settled by the former decision of this Court, where it was adjudged that the proceeds of the sale of the property covered by the liens of the judgment should be paid to the holders of such judgments in the order of such liens.

The second question has been conclusively adjudicated by the decree of Judge Norton; for he held that if any of the property had been sold by Mr. Dial as assignee, the proceeds of such sale should "be substituted therefor," and there was no appeal from that portion of his decree. This, therefore, was a final adjudication that the proceeds of the sale of the Martin house, represented by the Powers mortgage, was realty, and, therefore, bound by the lien of the judgments; and the Circuit Judge erred in holding otherwise.

11—48

For a proper understanding of the third question, it is necessary to state that when Mr. Dial, acting under his supposed authority as assignee, sold the Martin house, the purchase money was secured by the notes and mortgage of Power, and both notes and mortgage contained stipulation that, in case of suit for collection, the maker of the notes—the mortgagor—would also pay ten per cent. attorney's commissions. These notes, together with the mortgage securing payment of the same, were turned over to the receiver by Mr. Dial, and were afterwards put in suit by the receiver, which resulted in a judgment of foreclosure, in which it was provided that the proceeds of the sale should, after paying costs and expenses, be applied to the mortgage debt, and the balance to the ten per cent. attorney's fees, and, accordingly, such proceeds were so applied. These commissions never constituted any part of the assets of the assigned estate of Poole for distribution amongst his creditors, but was an amount stipulated to be paid by the mortgage debtor, over and above the amount of the purchase money of the mortgaged premises, for the purpose of relieving the holder of the mortgage from the expense incident to the collection of the mortgage debt, in case it became necessary to bring suit for collection of the same. While, therefore, strictly speaking, these commissions rightfully belonged to the receiver when he became the legal owner and holder of the notes and the mortgage securing the payment of the same, yet as the receiver acquiesced in the payment of these commissions to the attorneys who obtained the judgment of foreclosure and sale, and now by his counsel makes no objection to such disposition of these commissions, we do not see how any other parties can make any such objection. We think, therefore, that the Circuit Judge erred in directing that the amount of these commissions should be distributed amongst the general creditors.

As to the fourth question, we agree with the Circuit Judge in the view which he has taken. The rents of the

real estate were not subject to the lien of the judgments, and hence they should be disposed of as directed in the Circuit decree. Even a mortgage, which is a specific lien upon the real estate covered by it, creates no lien upon the rents of such real estate, unless there is a special stipulation to that effect in the mortgage; and a judgment stands upon no better footing, in this respect, than a mortgage.

As to the fifth question, we agree with the Circuit Judge. Mr. Dial undoubtedly rendered valuable services to the estate, and he should be allowed as full compensation for such services as the law will permit.

As to the sixth question, we are unable to see how Mr. Dial can be allowed any commissions on the sale of the Martin house under the Power mortgage. When he sold the house, he received no money and paid out none, but the sale was on credit, well secured by the notes and mortgage above referred to, which were turned over to the receiver under the order of the Court, and were collected by the receiver; and hence, under the express term of the statute (sec. 2145 Rev. Stat.) fixing the commissions of an assignee, he cannot be allowed any commissions upon the amount of the sale of the Martin house, as he neither received nor paid out any part of the purchase money. Nor can he be allowed any commissions on the subsequent sale of that house under the Power mortgage, as that sale was made by the clerk under the order of the Court, and not by Mr. Dial, and he neither received nor paid out any part of the proceeds of such sale. We must, therefore, agree with the Circuit Judge in the view which he has taken of this question.

As to the seventh question, we also agree with the Circuit Judge. The commissions to be allowed a receiver are not definitely fixed by any statute, so far as we are informed; but that seems to be a matter left to the discretion of the Court. See section 265, Code of Procedure.

The only remaining question is the eighth, as to which we are unable to agree with the Circuit Judge. The claim of H. B. Claflin & Co., which was allowed by the Circuit Judge, was never presented nor established in the case, and we do not see by what authority it could be allowed. The creditors of J. T. Poole were called in by the order of the Court to prove their claims before the clerk of the court, by a day appointed for that purpose, "on pain, upon failure to do so, of being barred of all benefit under this decree," and it is stated in the "Case" as prepared for argument here, that "the claims of H. B. Claflin & Co. were never presented nor established in the case." It is true, that it is stated *in the argument* of two of the counsel that the claim of Claflin & Co. was not objected to when presented before his Honor, Judge Townsend, but, under the well settled rule, facts appearing only in the argument of counsel cannot be considered by this Court; and more especially is this so where the facts as stated in the "Case" are inconsistent with the statements made in argument, as is the case here. One of the counsel, recognizing the well settled rule, has contended that this Court will presume that the Circuit Judge had sufficient testimony before him to establish the claim. Possibly this might be so if the "Case," as settled by the Circuit Judge, did not, as it does here, by the quotation above made from the "Case," show that such a presumption is altogether unwarranted by the facts as settled in the "Case."

The judgment of this Court is, that so much of the judgment of the Circuit Court as is in conflict with the foregoing views, be reversed, and that in all other respects the judgment appealed from be affirmed, and that the case be remanded to the Circuit Court for the purpose of having the views herein announced carried into effect.